**IT IS ORDERED as set forth below:**



**Date: September 9, 2013**

_____

**Mary Grace Diehl
U.S. Bankruptcy Court Judge**

_____

**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ROME DIVISION**

| | | |
|---|---|---|
| In re: | : | Chapter 7 |
| | : | |
| **BENNY WAYNE BUTLER and TAMMY ANNETTE BUTLER,** | : : : | **Case Number: 11-40930-MGD** |
| Debtor. | : | Judge Mary Grace Diehl |
| _____ | : | |
| **SKYDIVE ARIZONA, INC.** | : : | |
| Plaintiff. | : | No. 11-4037-MGD |
| v. | : : | Adversary Proceeding |
| **BENNY WAYNE BUTLER,** | : : | |
| Defendant. | : | |
| _____ | : | |

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**

Before the Court is Plaintiff's Motion for Summary Judgment ("Motion"). (Docket No. 17). Plaintiff filed a Statement of Undisputed Facts ("Statement") and a Brief in Support of Plaintiff's Motion for Summary Judgment ("Brief"). (Docket Nos. 18-9). The Motion was unopposed by

Defendant, Benny Butler, who is one of the joint Debtors in the related bankruptcy case, Case No. 11-40930. The Complaint is for nondischargeability of debts pursuant to 11 U.S.C. § 523(a)(6). (Docket No. 1).

I.     **BACKGROUND**

Plaintiff filed an action in the United States District Court of Arizona against Defendant and several other parties (collectively, "defendants") asserting claims for trademark infringement under § 32 of the Lanham Act, false advertising under § 43(a) of the Lanham Act and cybersquatting under § 43(d) of the Lanham Act. On or about February 2, 2009, the Arizona District Court entered an order granting summary judgment in favor of Plaintiff against defendants on the false advertising claim.[1] Liability for the remaining two claims was determined in a jury trial. On October 2, 2009, the jury rendered a verdict finding defendants liable on the trademark infringement and cybersquatting claims ("Jury Verdict"). (Exhibit A). The jury awarded actual damages of $2,500,000.00 against all defendants on the trademark infringement claim and also awarded $2,500,004.00 of the total profits made by defendants in relation to the trademark infringement, of which Defendant was personally liable for $500,000.00. The jury found that Plaintiff had proven by clear and convincing evidence that the infringement was "willful." The jury awarded $1,000,000.00 in damages relating to the false advertising claim and found that Plaintiff had proven by clear and convincing evidence that the false advertising was done "willfully." The jury awarded statutory damages of $600,000.00 on the cybersquatting claim, of which Defendant was liable for $120,000.00.

Following a post-trial hearing, the Arizona District Court entered an Order doubling the

---

[1] This Order was not included in the record in the current case.

actual damages awarded in the Jury Verdict to $5,000,000.00 on the trademark infringement claim and $2,000,000.00 on the false advertising claim ("Post-Trial Order"). (Exhibit B). In doing so, the District Court emphasized the defendants' conduct, including the "seeming disregard for the people they harmed or the reputation they sullied . . . ." (Exhibit B at p. 21). Additionally, the Court awarded attorney's fees for Plaintiff, finding that this was an "exceptional case." The Court stated that generally, an infringement case is exceptional when the conduct is "malicious, fraudulent, deliberate or willful." Here, where the jury "specifically determined that [d]efendants' willfully violated Lanham Act sections 43(a) and 32," the Court determined that the case was exceptional. (Exhibit B at p. 22). The allowed attorneys fees encompassed work done on the false advertising and trademark infringement claims and for a portion of the fees incurred in defending against counterclaims. The Court ordered the plaintiff to file a memorandum in support of its fees. The Order awarding fees was not included in the record in the current proceeding. However, Plaintiff asserted and Defendant did not deny that the Court awarded $1,063,550.00 in attorneys' fees. (Statement).

On April 16, 2010, the District Court entered judgment against defendants ordering that Plaintiff was entitled to recover from defendants jointly and severally a total sum of $9,500.004.00 plus attorneys' fees with post-judgment interest on the trademark infringement and false advertising claims. Defendant would be personally liable for $120,000 on the cybersquatting claim ("Judgment"). (Exhibit C). The District Court also entered a permanent injunction against defendants ("Permanent Injunction"). (Exhibit D).

Defendants filed an appeal with the United States Court of Appeals for the Ninth Circuit,

Case No. 10-16099.[2]  Defendants appealed the grant of partial summary judgment as to liability for false advertising, the jury's actual damages and profits awards and the District Court's damages enhancement.  Plaintiff cross-appealed the limitation in scope of the Permanent Injunction.

On March 23, 2011, Defendant and his wife, Tammy Butler, filed a Chapter 7 petition for relief.  The Court authorized the parties to proceed with prosecution of the appeals. (Case No. 11-40930, Docket No. 51).  Plaintiff filed a proof of claim in the main case on July 27, 2011 totalling $10,683,555 which breaks down to $2,500,004 for lost profits, $5,000,000 in damages for trademark infringement, $2,000,000 in damages for false advertising, $120,000 in damages for cybersquatting and $1,063,555 in attorneys fees.  On July 1, 2011, Plaintiff initiated this Adversary Proceeding by filing a Complaint to Determine Nondischargeability of Debt pursuant to 11 U.S.C. § 523(a)(6).  This Court stayed the Adversary Proceeding pending the outcome of the appeals.  (Docket No. 9).

On March 12, 2012, the Ninth Circuit Court of Appeals entered an Order reversing the Post-Trial Order doubling actual damages and affirming the District Court as to actual damages, lost profits and statutory damages for cybersquatting ("Circuit Court Order"). (Exhibit F).  The reversal was based upon the lower Court's punitive intention, not on a reversal of the lower court's findings.  Plaintiff has not amended its proof of claim, however the Motion makes clear that Defendant is asserting nondischargeability of the debt as modified by the Circuit Court Order.   In its Motion, Plaintiff argues that collateral estoppel applies, and it is therefore entitled to summary judgment.

**II.    ANALYSIS**

---

[2] Plaintiff asserts in its Statement that defendants filed two appeals, one contesting the Judgment and the Permanent Injunction and the other contesting the award of attorney's fees.  Plaintiff further states that the Circuit Court Order addresses both appeals.  However, this Court's review of the Circuit Court Order shows that it does not specifically address the award of attorney's fees nor does it reference an appeal of that award.

A.     **Summary Judgment Standard**

Pursuant to Rule 7056 of the Federal Rules of Bankruptcy Procedure, incorporating Rule 56 of the Federal Rules of Civil Procedure, a grant of summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The movant bears the "initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted); *accord, e.g., Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1303 (11th Cir. 2009). The court must resolve a motion for summary judgment by viewing all evidence and drawing all reasonable inferences in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Rosen v. Biscayne Yacht & Country Club, Inc.*, 766 F.2d 482, 484 (11th Cir. 1985); *Lubin v. Cincinnati Ins. Co.*, 2010 WL 5313754, at *4 (N.D. Ga. Dec. 17, 2010) (citing *Patton v. Triad Guar. Ins. Corp.*, 277 F.3d 1294, 1296 (11th Cir. 2002)). The Bankruptcy Local Rules require that a party moving for summary judgment attach a statement of undisputed material facts. Any facts not controverted by the nonmoving party in a responsive statement are deemed admitted. B.L.R. 7056-1.

B.     **Non-dischargeability Standards**

Exceptions to discharge must be construed narrowly, *Equitable Bank v. Miller (In re Miller)*, 39 F.3d 301, 304 (11th Cir. 1994); *Matter of Cross*, 666 F.2d 873, 880-81 (5th Cir. Unit B 1982); *Carlan v. Dover (In re Dover)*, 185 B.R. 85, 88 (Bankr. N.D. Ga. 1995), and the burden is on the party seeking nondischargeability to prove by a preponderance of the evidence that such an exception

is warranted. *Lewis v. Lowery (In re Lowery),* 440 B.R. 914, 921 (Bankr. N.D. Ga. 2010) (citing *Grogan v. Garner*, 498 U.S. 279, 111 S. Ct. 654, 112 L. Ed. 2d 755 (1991)).

1. 11 U.S.C. § 523(a)(6)

Section 523(a)(6) excepts from discharge an individual's debts incurred by "willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). Under this section, "willful" acts are those that are "deliberate or intentional," S. REP. NO. 95-989, at 79 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5865; H.R. REP. No. 95-595, at 365 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6320, and a showing of mere recklessness does not establish willfulness. *Kawaauhau v. Geiger*, 523 U.S. 57, 64 (1998); *Lee v. Ikner (In re Ikner)*, 883 F.2d 986, 989 (11th Cir. 1989) (citing *Chrysler Credit Corp. v. Rebhan*, 842 F.2d 1257, 1262-63 (11th Cir. 1988)); *Fincher v. Holt (In re Holt)*, 173 B.R. 806, 812 (M.D. Ga. 1994) (quoting *Chrysler Credit Corp. v. Smith (In re Smith)*, 143 B.R. 284, 291 (Bankr. M.D. Ga. 1992)).

The legislative history on the term "willfulness" refers to a deliberate and intentional act that necessarily leads to injury. H.R. REP. NO. 595, 95th Cong., 1st Sess. 365 (1977). A willful injury occurs when the debtor "commits an intentional act the purpose of which is to cause injury or which is substantially certain to cause injury." *In re Jennings*, 670 F.3d 1329, 1334 (11th Cir. 2012); *see Kawaauhau,* 523 U.S. 57. "Malicious" acts under this section are "wrongful and without just cause or excessive even in the absence of personal hatred, spite, or ill will." *Matter of Holt*, 173 B.R. 806, 812 (Bankr. M.D. Ga. 1994). Malice can be implied from the nature of the act. *In re Walker*, 48 F.3d 1161, 1164 (11th Cir. 1995). "To establish malice, a showing of specific intent to harm another is not necessary." *In re Jennings*, 670 F.3d 1334 (internal quotations omitted). Courts have held that a wrongful act done intentionally, which necessarily produces harm or which has a substantial

6

certainty of causing harm and is without just cause or excuse, is "willful and malicious" within the meaning of section 523(a)(6). *See In re Walker*, 48 F.3d 1161, 1164 (11th Cir. 1995); *accord Printy v. Dean Witter Reynolds, Inc.*, 110 F.3d 853, 37 C.B.C.2d 1370 (1st Cir. 1997) (collecting cases).

**C.     What is the Applicable Standard for Collateral Estoppel?**

The Supreme Court has determined that collateral estoppel applies in nondischargeability proceedings. *Grogan v. Garner,* 498 U.S. at 284-5. The doctrine of collateral estoppel prohibits relitigation of issues already adjudicated by a valid and final judgment of another court. *In Re Bilzerian*, 100 F.3d 892 (11th Cir. 1996). In determining whether the doctrine of collateral estoppel applies in a particular case, the bankruptcy court applies the law of the court issuing the prior judgment. *Id.* The prior judgment in this case was issued by an Arizona District Court. However, Plaintiff has made no proffer as to the basis of federal jurisdiction in that proceeding. If the basis was diversity of citizenship, then the preclusion law of Arizona applies; however, if the basis was federal question, the federal common law applies. *Compare Semtek Intern. Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508 (2001) *with Taylor v. Sturgell*, 553 U.S. 880, 891-2 (2008). Although the claims brought in District Court, of which this Court is aware, were based on violations of federal statutes, it is not necessary for this Court to jump to conclusions as to the basis of federal jurisdiction. In its Brief, Plaintiff cites to an Arizona state law case for the elements of collateral estoppel, but Plaintiff also correctly notes that the elements under federal law are virtually the same.[3]

---

[3] In the case cited by Plaintiff, collateral estoppel applies if "(1) the issue [was] actually litigated in a previous proceeding, (2) the parties [had] a full and fair opportunity and motive to litigate the issue, (3) a valid and final decision on the merits [was] entered, (4) resolution of the issue [was] essential to the decision, and (5) there [was] common identity of the parties." *Garcia v. General Motors Corp.,* 990 P.2d 1069 (Ariz. Ct. App. 1999). An additional element is cited in other Arizona cases: whether the party against whom collateral estoppel is being asserted actually did litigate the issue. Inclusion of this additional element appears to be good law, as it is recited

Under federal law, collateral estoppel "bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment . . . [where the parties] have had a full and fair opportunity to litigate." *Taylor*, 553 U.S. at 892 (internal citation and quotations omitted). Subject to certain exceptions not applicable here, the party against whom collateral estoppel is asserted must have been a party to the prior proceeding. *Id* at 893. "The burden of proof is on the party seeking to assert collateral estoppel . . . [and] [a]ny reasonable doubt as to what was decided by a prior judgment should be resolved against allowing the collateral estoppel effect." *In re Baldwin*, 245 B.R. 131, 134 (9th Cir. B.A.P. 2000).

**1.    Does the jury verdict on cybersquatting constitute issue preclusion of the nondischargeability of the related debt under Section 523(a)(6)?**

Under, 15 U.S.C. § 1125(d)(1)(A), cybersquatting occurs where a person

> **(i)** has a bad faith intent to profit from that mark, including a
> 
> personal name which is protected as
> 
>  a mark under this section; and
> 
> **(ii)** registers, traffics in, or uses a domain name that--
> 
> **(I)** in the case of a mark that is distinctive at the time of
> 
> registration of the domain name, is identical or confusingly similar
> 
> to that mark;
> 
> **(II)** in the case of a famous mark that is famous at the time of

---

in an Arizona Supreme Court opinion which has not been overturned. *Chaney Bldg. Co. v. City of Tucson,* 148 Ariz. 571, 574 (1986); *See In re Child*, 486 B.R. 168, 172-4 (9th Cir. B.A.P. 1993)(discussing the divergence in case law as to this element).

>registration of the domain name, is identical or confusingly similar
>
>to or dilutive of that mark . . . .

15 U.S.C. § 1125(d)(1)(A). In determining that a jury verdict finding liability for cybersquatting established a willful and malicious injury, the Court in *In re Luby* focused on the importance of the "bad faith" requirement. 438 B.R. 817, 838-9 (Bankr. E.D. Pa. 2010). Furthermore, as that Court also noted, the cybersquatting statute contains a safe harbor provision which explains that bad faith "shall not be found in any case in which the court determines that the person believed and had reasonable grounds to believe that the use of the domain name was fair use or otherwise lawful." 15 U.S.C. § 1125(d)(1)(B)(ii). That Court stated that "[b]ad faith and malice are essentially the same state of mind: both intend harm." *Id*. at 839. Therefore, the Court concluded that a finding of liability for cybersquatting constituted a "willful and malicious injury" under §523(a)(6). *Id.*

The Court in *In re Barlow* stated that a finding of liability for cybersquatting satisfied the "willful" prong because the defendant would have to intend to profit at the plaintiff's expense, which means that "injury was substantially certain to occur as a result of his cycbersquatting, satisfying the standard for willfulness . . . ." 478 B.R. 320, 335 (Bankr. S.D. Ohio 2012). Further, because there could be no bad faith if the defendant believed using the domain "was a fair use or otherwise lawful," the "without just cause or excuse" standard for malice was "almost certainly" satisfied. *Id.* (ultimately applying collateral estoppel based on the "exceptional cases" standard, discussed below, in awarding attorney's fees).

This Court finds the reasoning in *In re Luby* and *In re Barlow* persuasive. The necessary finding of bad faith shows that Defendant committed a wrongful act – cybersquatting – with intent to cause harm and without just cause. Therefore, the issue of Defendant's perpetrating a willful and

9

malicious injury was necessarily determined by the jury in the prior proceeding. The issue was actually litigated during the jury trial on the cybersquatting claim, the Jury Verdict was a final judgment which was not overturned on appeal, and the party against whom collateral estoppel is being asserted was a defendant in the prior proceeding. Thus, collateral estoppel applies to prevent Defendant from relitigating the willful and malicious nature of his acts. Summary judgment is appropriate as to the nondischargeability of the debt related to cybersquatting.

**2.     Does the jury verdict on the trademark infringement claim constitute issue preclusion of the nondischargeability of the related debt under Section 523(a)(6)?**

The Jury Verdict determining actual damages and lost profits clearly demonstrates that Defendant's infringing acts caused injury to Plaintiff. The jury also specifically found that the trademark infringement was "willful."[4] The verdict, by itself, does not appear to determine whether the acts themselves were done willfully or if the acts were willfully done with intent to cause harm, as is required under Section 523(a)(6). However, "intentional infringement is tantamount to intentional injury under bankruptcy law" because "the intent to infringe and the intent to deprive the mark's owner of the value and benefit of his property are opposite sides of the same coin." *In re*

---

[4] Plaintiff, in its Notice of Filing of Proposed Findings of Fact and Conclusions of Law on Plaintiff's Motion for Summary Judgment ("Proposed Order") (Docket No. 30), would have this Court rely on the District Court's instructions to the jury. However, the jury instructions were not included in the record in this case or in Plaintiff's Statement. It is the moving party's burden to show that a material fact is not in dispute by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials . . . . F.R.B.P. 7056(c). Courts must consider not only documents singled out by the attorney but also those merely filed. *Keiser v. Colliseum Properties,* Inc., 614 F.2d 406, 410 (5th Cir. 1980). However, "[c]ourts do not search outside a record in order to notice documents in another case, even where the same parties are involved, unless the proceedings are put in evidence." *In re KZK Livestock, Inc.,* 221 B.R. 471, 475 (Bankr. C.D. Ill. 1998).

*Mucci*, 458 B.R. 802, 813 (Bankr. D. Conn. 2011).

Liability for trademark infringement occurs when, without consent, a person "use[s] in commerce any reproduction, counterfeit, copy or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1)(a). "Trademark infringement is established if the plaintiff demonstrates (1) ownership of a valid, protectable mark, and (2) a likelihood of confusion, mistake or deception in the defendant's use of the mark." *In re Luby,* 438 B.R. at 840. A bare finding of liability for trademark infringement does not necessarily establish that the act is nondischargeable under Section 523(a)(6). *See In re Smith* 2009 WL 7809005, *at 1, 13-4 (B.A.P. 9th Cir. Dec. 17, 2009)(affirming the Bankruptcy Court's holding after a trial that debtor acted without just cause or excuse where that Court had found at the prior summary judgment stage that liability for trademark infringement did not conclusively establish the just cause or excuse element of malice) *aff'd In re Smith*, 465 Fed.Appx. 707 (9th Cir. Dec. 19, 2011). In *In re Luby*, the Court relied on evidence in the record, including exhibits produced at trial and a record of witness testimony to determine that the defendants intended to cause harm to the plaintiff. *In re Luby,* 438 B.R. at 841. Here, there is no such evidence provided to this Court from which the Court could draw a similar conclusion.

In the Post-Trial Order, the District Court increased the award of actual damages based on the jury's finding of willfulness, the defendants' "disregard for the people they harmed or the reputation they sullied," and their "purposely deceitful" conduct.[5] (Exhibit B). Further, the Court

---

[5] On appeal, the Circuit Court reversed the enhancement of actual damages finding that the District Court based its award on a punitive motivation based on defendants' wrongful and willful conduct, which is not a proper basis for enhancement of damages under the Lanham Act.

11

awarded Plaintiff attorney's fees, finding the case to be "exceptional" which means "malicious, fraudulent, deliberate, or willful."  Although the Court did not specify which of these categories applied, the Court did subsequently state that defendants' conduct was "particularly egregious." (Exhibit B).

In *In re Mucci,* the Bankruptcy Court found that collateral estoppel applied because in awarding attorney's fees in the prior proceeding, the District Court stated that the conduct was "malicious, fraudulent, deliberate, *and* willful." 458 B.R. at 812 (emphasis added).  The Bankruptcy Court noted that because the standard was stated "in the conjunctive . . . [that] all the findings of "willful" and "malicious" and "deliberate" were essential to the Attorney Fee Award and were in no sense dicta." *Id.*  The finding by the District Court in that case brought not only the attorney's fee award within the meaning of Section 523(a)(6) but the damages award as well. *Id.*; *see also In re Goldzweig*, 54 B.R. 229, 234 (Bankr. N.D. Ill. 1985) (applying collateral estoppel where the award of treble damages and attorney's fees was "expressly dependent upon the court's finding that [the Lanham Act violation] was willful and malicious."[6]).

However, in *In re Latch*, an Eleventh Circuit case with different but analogous facts, the Court reached a different conclusion.  In that case, the underlying claim was for civil theft, and the jury was asked whether the defendant acted "with malice, moral turpitude, wantonness, willfulness

---

The Circuit Court did not, however, question the District Court's statements regarding the nature of the defendants' conduct.

[6] The preceeding District Court found, in one Order, that trebling damages was appropriate because the conduct was "intentional and willful; each knew that what they were doing was illegal" and also found that attorney's fees were appropriate because the acts were "malicious, fraudulent, deliberate, and willful." *Winterland Concessions Co. v. Creative Screen Design, Ltd.,* 214 U.S.P.Q. 188, *11-3 (N.D. Ill. 1981).

or reckless indifference to the rights of [the plaintiff]." 820 F.2d 1163, 1165 (11th Cir. 1987). Although the jury answered this question in the affirmative, the Bankruptcy Court found that use of the word "or" allowed for different bases of liability and therefore it had not necessarily been determined that the injury was willful and malicious. *Id.* The Eleventh Circuit reversed stating that the Court must look to the entire record, including "other questions answered by the jury and the judgment of conviction" to decide whether it was determined if the injury was willful and malicious. *Id.* at 1166.

Here, although the District Court stated the standard in the disjunctive, Plaintiff has met its burden of proof to show that the findings of the Court taken as a whole establish malice. The Court's discussion of defendants' egregious behavior, the nature of a trademark infringement claim for which judgment was entered and the jury's finding of willfulness lead this Court to that conclusion. This Court is unable to imagine a scenario where a defendant could egregiously and willfully misuse another's trademark in a way that is likely to cause confusion, mistake or deception and also show just cause or excuse. Further, Defendant has not provided the Court with an alleged just cause or excuse for his actions. In short, Plaintiff has satisfied its burden of proof to show that collateral estoppel applies to the issue of "malice."

Defendant perpetrated a willful and malicious injury, and that issue was necessarily determined, based on the record as a whole, in the prior proceeding. The issue was actually litigated during the jury trial on the trademark infringement claim and in the Court's award of attorney's fees. The Jury Verdict and award of attorney's fees were final judgments which were not overturned on appeal, and the party against whom collateral estoppel is being asserted was a defendant in the prior proceeding. Thus, collateral estoppel applies to prevent Defendant from relitigating the willful and

13

Document      Page 14 of 16

malicious nature of his acts. Summary judgment is appropriate as to the nondischargeability of the debt related to trademark infringement and the related attorney's fees.

3. **Does the jury verdict on the false advertising claim constitute issue preclusion of the nondischargeability of the related debt under Section 523(a)(6)?**

False advertising occurs when "an entity that misrepresents the 'nature, characteristics, qualities, or geographic origin' of its services in commercial advertising or promotion is liable to the persons damaged by the false or misleading representation." *Sovereign Military Hospitaller Order of St. John of Jerusalem of Rhodes and of Malta v. Florida Priory of Knights Hospitallers of Sovereign Order of Saint John of Jerusalem, Knights of Malta, Ecumenical Order*, 702 F.3d 1279, 1294 (11th Cir. 2012)(quoting 15 U.S.C. § 1125(a)(1)). A plaintiff must show that:

> (1) the defendant's statements were false or misleading; (2) the statements deceived, or had the capacity to deceive, consumers; (3) the deception had a material effect on the consumers' purchasing decision; (4) the misrepresented service affects interstate commerce; and (5) it has been, or likely will be, injured as a result of the false or misleading statement. *Id.*

Although, "no proof of intent or willfulness is required to establish a violation of Lanham Act § 43(a) for false advertising," Plaintiff has provided undisputed evidence to show that the record on the whole establishes a willful and malicious injury. *Vector Products, Inc. v Hartford Fire Ins. Co.*, 397 F.3d 1316, 1319 (11th Cir. 2005). Here, the jury found that the false advertising was done "willfully." An element of false advertising is that Plaintiff was or likely will be injured by the false statement. Therefore, a defendant could not willfully commit false advertising without intending to

cause harm. The jury's finding established that the injury was willful for purposes of Section 523(a)(6).

Although the District Court's summary judgment order was not included in the record, the Permanent Injunction Order speaks of the findings of the summary judgment order. Specifically, the Court stated that it had found that defendants "falsely claimed [they] owned or operated skydiving centers in [various locations] when [d]efendants neither owned nor operated any such facilities. Additionally, the Court found that Defendants engaged in unfair competition by using photographs of Plaintiff's on their website." (Exhibit D). Combined with the Court's finding in the Post-Trial Order that defendants' conduct was "particularly egregious" and that it was an "exceptional case," along with the Jury Verdict and Judgment establishes that the conduct was malicious. Further, Defendant has not provided this Court with any evidence that its conduct was not willful or malicious, and in particular, that it acted without just cause or excuse.

Defendant perpetrated a willful and malicious injury, and that issue was necessarily determined, based on the record as a whole, in the prior proceeding. The issue was actually litigated during the jury trial on the false advertising claim and in the Court's award of attorney's fees. The Jury Verdict and award of attorney's fees were final judgments which were not overturned on appeal, and the party against whom collateral estoppel is being asserted was a defendant in the prior proceeding. Thus, collateral estoppel applies to prevent Debtor from relitigating the willful and malicious nature of his acts. Summary judgment is appropriate as to the nondischargeability of the debt related to trademark infringement, including the attorney's fees.

III.  CONCLUSION

Section 523(a)(6) prevents a debtor from discharging a debt for willful and malicious injury.

The nature of Plaintiff's injuries was necessarily determined in the prior proceedings and satisfies the standard for willful and malicious injury for purposes of the current proceeding. Collateral estoppel applies to prevent Defendant from relitigating the issue. Accordingly, it is

**ORDERED** that the Motion for Summary Judgment is **GRANTED**.

The Clerk shall serve a copy of this Order upon Plaintiff and Plaintiff's counsel, Defendant and the Chapter 7 Trustee.

**END OF DOCUMENT**